Please introduce yourselves and tell us who's going to be doing the talking. Assistant State's Attorney Gina DeVito for the People. Marvin Bloom on behalf of Jose Contreras, the Apple League. Okay, fine. And I'd just like to point out, these microphones, as you can tell, do not amplify. They only record, so the people in back can't hear a word you're saying unless you speak up. Okay. Thank you. We may begin. Thank you. May it please the Court, Assistant State's Attorney Gina DeVito for the People of the State of Illinois, I would like to reserve five minutes and rebuttal. It is undisputed that the trial court made an explicit finding below of probable cause when it found, and I quote, It is in this court's viewpoint, and I'm saying this as firmly as I could, that the CASP information was valid and viable and corroborated by the officers' observations on the scene at the Grand Avenue address. It's been corroborated and re-corroborated. Yet in the face of that finding, the trial court erred as a matter of law when it found that exigency was required for the police officers to search the car at the police station. In Maryland v. Dyson, a U.S. Supreme Court case that was decided in 1999, officers received a tip that defendant had gone to another state to buy narcotics. Fourteen hours later, when the defendant returned in an automobile with the car, the officers stopped the vehicle and conducted a warrantless search of the vehicle, recovering 23 grams of cocaine. The United States Supreme Court found that under established precedent, the automobile exception has no separate exigency requirement. So what was the trial court's rationale for saying, despite the fact that there was probable cause at the scene, that did not justify the warrantless search at the station? The trial court found that he needed exigency, and that there was no exigency when the car was moved to the Holman Square station. But does exigency... It's a hard word. It's a hard word. Does that factor in when the police have probable cause? You even talk about that, when they have probable cause. Well, under the automobile exception, in itself, it is because an automobile can move. However, once there is probable cause to search an automobile, you can move the automobile from its original location, as seen in Texas v. White, where the officers pulled over the defendant, who was suspected of passing forfeited checks. After they had him pull over, they observed him hiding checks or hiding something in the seat of the car. So at that point, the officers had probable cause. However, they did not search the car there. They moved the car to the police station, where they inquired of the defendant, asked his permission to search in the car, and when he didn't give it, they searched the vehicle and found the checks. And the U.S. Supreme Court in 1975 held that the officers with probable cause to search an auto on the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant. And so under their reason, too, they could have done it at the stop. Correct. There's nothing to... They wouldn't need a warrant at the stop. And the only reason they went to Holman is because of busy traffic situation at the stop. They were five minutes away. Correct. So really, all we really need to do is look at the stop. And if it was okay to search at the stop, why wouldn't it be okay to search at the station? Correct, Your Honor. Yes. Once there was probable cause, it was okay for the officers to move the vehicle. And once the car was stopped, certainly there was more than enough probable cause to search the vehicle. They did initially search the vehicle and could not locate the trap, and they then acted in a reasonable fashion with the time of day, with a busy intersection at Western and Lake Avenue, and determined that for officer safety, and then also to bring in the dog to search, to sniff the car to determine if there were actually narcotics in the car, they decided to not do that at that intersection, considering that there were perhaps guns in the vehicle, which were located when they did find the trap. Basically, the exigency has nothing to do with the situation. Correct. Yes. Yes, Your Honor. And in finding that there is no exigency, that exigency was not required, that the trial court then did err, we would ask for these reasons, and those stated in our brief, that you reverse the trial court's finding below, where he granted the defendant's motion to quash the arrest and suppress the evidence. Good morning, Your Honor. We take issue with the probable cause finding by the court, and under de novo review, this court can also take issue with that. I think the first thing that we should look at is why the police pulled the car over. We have the issue of the information that they got from a co-worker, a criminal, Mr. Casp, who in his confession related to the police, that he was given drugs by two Hispanics, Jose and Pedro, that they got these drugs from a car. There was absolutely no information at all provided by Casp that there was more drugs contained within the automobile. But what he said was, he saw Jose get the paper bag from the secret compartment in the car, and he brought it into the house, then the police observed the individuals, who they later learned were Jose and Pedro, bring a paper bag back out into the car, and one officer observed Jose reach into the back seat, and then the paper bag was nowhere to be found. So why does that not constitute probable cause to believe that there were drugs in the car? For this reason, there's legions of cases that talk about searches of a house, and when an affidavit for search warrants is presented to a judge, not only do they have to say, well, there was drugs in the house, they have to say that I saw drugs in the house, and there has to be a reasonable likelihood that there's more drugs in the house. That's why typically on a search warrant affidavit, the informant goes to the house, does a buy, and says, I saw him bring out a bag of drugs, he gave me a couple bags out of that larger bag, and I saw him carry the bag back into the house. That would be probable cause to believe. So we have Jose bringing in the bag and Cass saying he reached into the bag, gave me a quarter of the amount of heroin that he brought with him, the bag is still on the counter in my house, and then the police observe Jose go out with the paper bag and put it in the car. Well, we don't even know that it's still on the counter in the house until after the defendants are in custody, handcuffed, in custody at the Holman Station. No, we don't. No, that's when the police go back to the house. No, but we know that there was a paper bag taken out of the house. There's a paper bag, but even that paper bag, they don't, the police admit, they don't know what's in the paper bag. That's true. But they do know, it was told to them there was a car trip. They looked at the car, they couldn't find the bag, and they were told there was a car trip. So right there at the scene, they have probable cause to think this car is a car trip. Well, I take issue with that because you've never, I've never seen a case, and I don't think there's any reported cases, that if anything, if there was, as Your Honor was saying, if there was articulable reason to stop the car, why is it that the police have to come up with the excuse of a seat belt violation? That's number one. Well, but it doesn't matter. It really doesn't matter, right? Because there's still suspicion. All right. So let's say there's Terry's suspicion. Let's say that there's a reasonable articulable suspicion to stop the car. Why isn't that dissipated when they search the car and find no drugs or weapons? In fact, they go even further because D. Lopez says the car looked normal. The car looked normal. The difference is that had they not had the information on the car trip, I think you might have a good argument. But having had the information on the car trip, having seen the individual reach into the back with the bag, not seeing the bag then when they search the car, not seeing any – a car trap means it's probably – you can't see a car trap. That's why it's a threat. So – and car traps are illegal. So there's a reasonable belief there that something happened to that paper bag, they didn't see it fall out of the car, and it's not there, and they reached back. They saw all that. So they had a basis to stop that car because of the information on the car trip. And then they look in, there's no paper bag. Car traps aren't – first of all, that's gone back and forth. The constitutionality of the car trap statute, first it was reversed, it's now constitutional with the added thing that they have to show intent to do a criminal act with a car trap. Car traps by themselves are not illegal. They have to show intent under the statute. But when De Lopez says that the car looked normal, why then does that not dissipate probable cause rather than increasing probable cause? It increases because the paper bag isn't there. If they saw the paper bag, knowing that the paper bag is important because of what Karp said to the police, how important that paper bag was, they saw them, now they have information. They have the two names are exactly alike. The Cadillac is what it was said it to be. Everything was fitting in to what they were told. But those are, as the cases talk about innocuous details, innocent details, which is exactly what it is here. A gold Cadillac, that's an innocuous detail. Jose and Pedro, innocuous detail. A paper bag that we don't know what's in it, another innocuous detail. But isn't the accumulation of those details what's important here? You've got the police relying on this informant and everything he said sort of works out. The car is there. It's a gold Cadillac. There are two guys coming out of the house. Their names match. They're carrying a paper bag. He talked about a paper bag. Then at best that would provide basis for a Terry stop. At best. We don't even think the innocuous details do that. But at best it might provide for a Terry stop. Then not only do they do a Terry stop, they say that, okay, you have a valid license. We're pulling you over for a seat belt violation. But they do a total search of the car and come up empty. D. Lopez says that he, in fact, to him, the car looks normal. And I assume that he has some experience, as Your Honor is saying, with car traps. Then we get into the situation of Cabales, which, of course, is about 20 years after Johns and these other cases. The police are doing a surveillance on this house for over an hour. Over an hour. Why do we not have a dog, then, if based on Cass' confession, why don't we have a dog available? Instead, we have a Cabales situation with unlawful prolonging the detention on probable cause that, if anything, is dissipated, in our opinion, rather than increased. Then we have them taken to the station in handcuffs for detention, according to the police, just like they're pulled over for a seat belt violation, according to the police. And the car, and the cases talk about not only depriving them of their personal liberty, but the privacy interest in the car itself. The car is also removed to the station, a fact that courts frown on. Then if, why don't they have the dog at the scene? Why does the defendant have to then wait for two hours or three hours for the dog to come to the station? All the time, his possessory interest and his personal liberty are being infringed on. Would it be, do you agree or disagree that if there is probable cause at the stop, then it doesn't matter what happened at the home? Well, I disagree with the limited holding of Johns. Johns was a case unique on its facts, and it dealt with packages. And that shows the difference between this case and the Johns case. The Johns case, the police officers actually could rely on their sense of smell and smell the packages of marijuana that they saw the pickup trucks going to the airport and retrieving. It's almost like, and they saw the packages, they could smell the packages. The probable cause in that case would not dissipate at all. And that predated Cabalas. Cabalas says even if the search is valid in its inception, it can then turn unreasonable based upon the length of time and what occurs thereafter. And I think that's what Judge Ford was focusing on. He said if you were to bring these facts to me, and as a trial judge, he sees a lot of search warrants. If you were to bring these facts to me, I'd say go get a warrant. What is so hard with asking the police to get a warrant, either before the dog hits on the car or even after the dog hits on the car? If they didn't need a warrant at the stop, then there shouldn't be any change. Well, Cabalas, I don't think Cabalas says that. I think Cabalas says that the prolonging of it can turn it valid into illegal. Remind me if Cabalas is a Terry stop or a probable cause stop. Cabalas was a traffic stop case. Right. For a traffic violation. For a traffic violation. With no suspicion of anything else. With no suspicion of anything else. That's right. Then the dogs were there, the dogs hit on the car, and the courts said that that was proper. When the police pulled over this car, they were not only investigating a seat belt violation, but they had all of this other information about illegal activity associated with the car.  Well, the first part of it might distinguish it from Cabalas, because they did have more information than a regular traffic stop. However, the police at the motion to suppress didn't say, we pulled this car over because we had probable cause. They said, we pulled it over because of the seat belt violation. Well, the seat belt violation wouldn't permit them. They can look for evidence then, according to Gant, of a seat belt violation. They're not allowed to go through the whole car looking for more, according to Arizona v. Gant. They're allowed to look for the crime that was the basis of the original stop, which is what Arizona v. Gant said. And the cases that the state is citing, all of those cases are 25, 30 years old, and none of them have been re-cited in Illinois, but for Bradney, which was a case that the state cited, that's about 20 years old. All of this is very old law that I think, in view of Arizona v. Gant, and in view of Cabalas, is no longer viable Fourth Amendment law. So the reason they put the handcuffs on had to do with the trip. Is that correct? No, I think. Why were the handcuffs on? According to the police, the handcuffs were put on them to detain them for investigation. Which is, that's an arrest. I don't think even the judge disputes that. Right. But the police also believe that they had reliable information about guns. So if the cops were worried about guns. I don't think there's anything in the record of a cop saying that he saw guns in the car. He saw guns in the house, and these guys just came out of the house. All right. Then if there's guns in the house. The police could easily think, well, these guys could have taken those guns. If we believe they took the paper bag, there's nothing to stop us from thinking they took the guns. Well, I don't think there's any evidence in the record that any police said that they saw the shape of a gun or a rifle or anything else in the paper bag that was carried from the house. No, not in the paper bag. But it seems to me that they would have some concern about their own safety at that point, knowing that there's the potential that guns are somehow. Once they are taken out of the car in handcuffs and placed into the squad car, and then the car is searched on the scene, I think that would dissipate any fear of safety by the police. A Terry pat-down might be permissible, but not a full-blown search of the car. Well, not necessarily. Not if they believed that there was also a car trap, which the informant had been reliable about other things. And he told them there's a car trap. So if they think there's a car trap, car traps are designed to be hard to find. They're designed to be obscure. You're at, you know, Lincoln or at Western and Lake, and it's dark and there's traffic all around. I'm not sure that I see what difference it makes to look at that car on the street there or five minutes away in the police station. If they got a warrant, there would absolutely be no difference. Well, they didn't. I don't think that you've convinced me that they needed a warrant for the first search. I'm sorry? If they didn't need a warrant to search the car when they stopped it, then I don't see how they needed a warrant when they took it to the police station. Okay. Let's start with the first one. Why are you saying that they needed a warrant to search the car when they stopped it? Because this is not a package case like in John's. It's not a duffel bag case. This is a paper bag case. Pardon me? It's a paper bag case. It's a paper bag case where no one says that there's anything in a paper bag. That's pretty innocuous. That's not true. The informant said there were drugs in the bag. No. The informant says that he was given drugs in the house. When he was given drugs, the drugs were in a paper bag. And this is not a unique bag. This doesn't say Neiman on it. It's a brown, ubiquitous paper bag. So unless we carve out a whole new exception that we're allowed to search cars based upon brown paper bags or fear of something when we search the car and we don't see anything, well, maybe that means there's a compartment there. Does that mean then that every car that we see on the street that we can't find anything can then be hauled off to the police station and without a warrant literally tear the car apart, literally tear the car apart at the police station? And I pointed out to the judge, which came in almost the same time period, the FBI had a very similar case at the same time period. You can't look at that. That's not a decision. Pardon me? That's not something we can rely on. You're talking about the federal case. Well, it can be relied on for this. Why should it be any different for them than it is for the Chicago police to get a warrant? That's not precedent for us. That doesn't mean anything. It shows one's adherence to the Fourth Amendment than the other does. We don't know. That hasn't been reviewed by a superior court. It really didn't tell us much. In this case, I don't believe there was probable cause. These guys weren't named in any investigation. Casp is arrested. His information is not reliable. Why is it not reliable? It turns out that everything he said is confirmed. But these are innocuous details. There's no track record of Casp at all. Well, we're not calling it innocuous since it actually all turned out to be as he said it. We don't justify searches by what we come up with afterwards. No, we don't. But based upon everything he said, everything fell into place. I mean, that's the information they had, that there was a crime. And they see these guys coming out of the house where he said there was exchange of drugs. I mean, what more did the police have to do? What would you say? I think the police have to get a warrant. Just like the trial court judge believed he thought that the police should get a warrant. There's absolutely no reason why they should not get a warrant. The car is immobilized. The whole Chambers Carroll progeny of cases is not here. This car is immobilized by the police. The defendants are handcuffed. The car is at the station. It's a Thursday where the courts are open. Judges are there. There's no reason they can't get a warrant. Your position is there was no probable cause at the scene, and the police couldn't have gotten a warrant on these innocuous details, right? They might have been able to get a warrant at the station after a dog sniff. I don't think there was enough evidence at the scene when they're into the car, search the car, find no drugs, find no contraband. And according to the police, he doesn't say the car looks suspicious. He says it looked normal. It looked normal. So where is the probable cause for that? But your position is no dog sniff is warranted here. Once you look in the car and you don't see a paper bag, what do you bring in a dog for? Because you don't need a warrant for a dog sniff. They could have done, they could have properly done a dog sniff at the scene, according to Cabales. But when you handcuff the defendants, incapacitate the car, have the police drive it to the station, and then wait a couple hours for a dog sniff, and no attempt made to get a warrant either before then or even after then. After then would have been more than appropriate to put that item in the affidavit. Not only do we have what your Honor, Judge Hyman's talked about, well, we search the car and maybe this corroborates that maybe there is a compartment there. Well, then, if you have the dog at the station sniff the car and he gives a positive hit on the car, that might be something that any trial judge, including Judge Ford, would say, yeah, that's enough for a warrant. But failing that and just doing the more expeditious thing of tearing the car apart, based upon really no more than a hunch, no more than a hunch, then that's improper. And that's why this case really invokes not only the probable cause issue, but also the Cabales issue, where they're removing the car for the sniff. But when you call a hunch, it could be a reasonable suspicion. I mean, it's a fine line. There is a difference. To me, it might be more of a reasonable suspicion, which you want to characterize as. Which when they search the car on the street and go beyond what they're allowed to do, when they actually look in the car, even under your Honor's reasonable suspicion standard, and find nothing. I've never seen a case where finding nothing supports probable cause. That's an anomaly in the criminal justice system. That's why it's so important that when they move the car to the station and they have the dog at the station, which they don't need a warrant to have a dog sniff it, according to Cabales. They don't need a dog then. But if the dog sniffs it at the station and gives a positive hit, then you include that in a warrant. What's the hurry then when the defendants are incapacitated, the car is incapacitated, why not get a warrant? And I suggest, Your Honor, the Supreme Court case of U.S. v. Place. In U.S. v. Place, there was a tip from Miami that a drug courier was bringing bags of dope to New York. The New York DEA saw the person, corroborated the details, yep, he's carrying bags and that's the description of the guy, and they take the bags and rather than searching them or doing something with them at the airport, they move the defendant and the bags to a different location and wait 90 minutes in that case to subject it to further searching. And the U.S. Supreme Court said that's not proper. Moving it to a different location, depriving him of his personal property, depriving him of his liberty on these facts and waiting 90 minutes to do it, that's what we have here and that's what Cabales addressed as well. It's the same type of situation. You focus on the fact that this is a nondescript paper bag. Let's assume it was a red-striped bag. And CASP said, Jose and Pedro arrived with a red-striped bag. They pull out heroin, give some to me, leave the rest on the counter. Police do the same thing. They see Jose walk out with a red-striped bag and then they look in the back of the car and that red-striped bag isn't there. Can't the absence of that thing give rise to probable cause? I don't believe it can, no. And the reason why I think it's a different situation when you have a brown bag as opposed to something like a place where actually they described the canvas bag in place that was moved. Here you have something that you can get from Subway almost or you can carry anything in a paper bag. You can carry money in a paper bag, which is not illegal. And if somebody delivered drugs and got money in a paper bag, the money itself is not illegal. And what's most important is that CASP does not say, and the police cannot say that CASP told them, that there was more drugs or contraband in the car at all. And to your point, Judge Hyman, that while the statute was the compartment statute, which I think is a misdemeanor now, if I'm not mistaken, having an unlawful compartment with intent to do a crime, I think is a misdemeanor. It was taken out of the absolute liability type of crime because they said that there could be legitimate purposes to having a compartment in a car. But the point is that when CASP can't even say that there's more in there, just like the situation where an informant in a typical dope case says that there's more in the house, without that, the police have no basis for believing that they have a right to search that house. Well, he did say that, though. He said, I saw them take this paper bag out of the car when they got to my house. They came into my house. They took drugs out of the paper bag, but they only gave me some of the drugs. The rest of the drugs are still in the paper bag in the house. These two guys are in the house. And, oh, by the way, there are guns there, too. Well, we don't know how many paper bags are in the house containing drugs. I mean, the police went, in fact, when they went back there, after the defendants were in custody, they went back there and they found more drugs in paper bags. So we don't know that. I mean, that's just all conjecture, which under the Fourth Amendment we're not really allowed to do. So our point is that there was no probable cause. The search at the scene was improper. Seizing them, seizing the car was improper. There's absolutely no excuse at all not to get a warrant, even after the dog sniff. It's easy enough to get a warrant rather than taking the more expeditious route that they did and just tear the car apart. Would you say then if we find there was probable cause at the scene, you lose? Pardon me? If we find there's probable cause at the scene, you lose. Game over. No, I don't believe that's true. If you find probable cause existed at the scene, then you still have to deal with the Cabalas issue and that they unlawfully prolonged it. And the probable cause has to be specific. It has to be not just packages like in John's that the police actually could see and sniff or in Bradney that the case cites, that the state cites where the person says that, you know, those are the stolen items that I saw the guy putting in his brown car. So those cases were very specific. I don't believe probable cause, even if Your Honor were to find that at the scene, I don't think that's enough to justify a warrantless search at the station. Otherwise, there's no Fourth Amendment requirement anymore. Cases have said you don't need a warrant. Well, you're talking about John's, and John's is a package case. It's not really a car case. They had probable cause to search the packages that the agents in John's sniffed and saw the guy pick up at the airport three days later. They said then the probable cause with the packages is enduring. In fact, the court in John's said that the defendants didn't make any claim on their property in John's, separating the car from the packages. Here, it would be pretty hard for Mr. Contreras to make a claim on his property when he's in custody.  And unless we completely eviscerate Fourth Amendment law with respect to car searches and allow the police on any car stop to say we searched the car, we didn't find anything, therefore there's a trap, corroborates what we heard, we're then allowed to take the car to the station and tear it apart without submitting it to some intervening person like a magistrate to okay it. That's what's improper, and that's what's very dangerous. If there's any other questions, otherwise I'll probably use my time up. Thank you. Okay. Thank you. So why was there probable cause? There was probable cause here, Your Honor. As soon as the officers arrived at the scene, saw two Hispanic males exit George Kass's apartment carrying a brown paper bag and enter a gold Cadillac that was parked behind George Kass's apartment. They saw the bag in the car, and they saw him turn around to the back of the car where Mr. Kass had said the trap was, and the bag disappeared. When they were pulled over, the two men were named Jose and Pedro, the same names that Mr. Kass had given the officers. And in addition, they could not locate the bag. There was more than enough probable cause there, especially since Mr. Kass's information provided subtle details of the scene that were verified by the officers at the scene. In regard to Cabales, that case, as Justice Mason stated, these officers were performing a traffic stop. There was no probable cause or suspicion that there were narcotics in the car. Another officer happened to be nearby with a drug-sniffing dog at the time of the arrest. So that defendant had been pulled over for speeding. So it is not the same fact situation there, where we have here, we're moving for our safety in a busy intersection. Further, this was not a house, as defendants are arguing here. It was an automobile, so the search was proper. We ask that you reverse the trial court's ruling below and remand for further proceedings. Okay, thank you very much. Thank you. Thank you for your excellent briefs and excellent argument. We'll take this case under advisement. We'll recess for a couple minutes and come back for the second case.